George W. KINGSLEY,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4424)

Trial was held November 20, 2000, in the courtroom of the Oregon Tax Court, Salem.

George W. Kingsley, Plaintiff (taxpayer), argued the cause *pro se.*

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision rendered January 5, 2001.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appeals from the assessment of additional income taxes for 1989 and 1990. By the time of trial, there were only four remaining issues: two concerning the amount of taxpayer's income, a dependent's exemption, and bad-debt losses.

## FACTS

For a number of years, taxpayer engaged in business as a general contractor, doing business as "G-2 Contracting." He worked on residential and commercial properties, doing both new and remodeling work. Taxpayer filed personal income tax returns for 1989 and 1990. The Internal Revenue Service (IRS) audited his federal returns and made a number of adjustments. The IRS sent taxpayer a copy of its audit and forwarded a copy to Defendant Department of Revenue (the department). The department assessed additional Oregon income taxes based upon the IRS audit. Taxpayer disputed a number of items and some errors were found in the audit. Taxpayer and the department reached agreement on all except four remaining issues. The court will discuss the evidence and its resolution of those issues separately.

## ANALYSIS

### Bad-Debt Losses

As a general contractor, taxpayer experienced varying degrees of success. Apparently, he often did not receive full payment for a job and took promissory notes for the unpaid balance. He testified that he attempted to collect on all of the notes, but was unsuccessful on a number of them. In 1989, taxpayer finished closing out his business and started working for others as an employee. His tax return reported $5,006 in unemployment compensation, indicating he was unemployed for a good portion of the year. Also in 1989, taxpayer consulted with his attorney who advised him to give up collection efforts on certain notes. He was advised that the six-year statute of limitations had expired and the notes were legally uncollectible. Taxpayer deducted the amounts of those notes as bad-debt losses.

Taxpayer introduced into evidence the original notes. The department contested the deduction of the notes in part because the copies furnished by taxpayer to the department had obviously been altered. Taxpayer maintains he did not make the alterations and does not know who did. The five notes in question are:

1.) Note dated October 21, 1975, in the amount of $1,980 by Theodore V. Herline. The department's copy shows

that the date had been changed from 1975 to 1979 in two places.

2.) Note dated April 11, 1977, in the amount of $8,000 by Avis Hayes. The department's copy shows a changed date in two places from 1977 to 1983. Also, the words "G-2 Contra[c]tors" was added to the payee line.

3.) Note dated July 1, 1983, in the amount of $5,000 by Rosemary W. Schueller. No copy of this note was furnished to the department.

4.) Note dated August 1, 1983, in the amount of $1,160.30 by Robert J. Balke. The department's copy was changed in that "G-2 Contractors" was added to the payee line.

5.) Note dated November 1, 1983, in the amount of $4,211.75 by George Weigart. The department has a copy of another note also issued by Weigart. That note shows the amount owing at $7,461.35. It was also purportedly signed October 20, 1983, and recites: "This note voids the previous note of November 1, 1983. Bearer will discount note for complete payment in full prior to November 1, 1990." *Id.* Taxpayer's note states: "This note voids the previous note dated 1-1-81."

■ Taxpayer testified that he reported the amounts of the notes as income when the notes were received. Therefore, taxpayer would have a tax basis in the notes. Business bad debts are fully deductible in the year in which they become wholly worthless. Determining when a note is wholly worthless is not always easy and taxpayers are given some discretion. Here, taxpayer concluded they had become worthless in 1989 and 1990 because his attorney advised him that a six-year statute of limitation made the notes uncollectible. Obviously, the notes dated 1975 and 1977 would have become uncollectible and therefore worthless in 1981 and 1983 respectively. No deduction is allowable for those notes in either 1989 or 1990. The statute of limitation for the remaining three notes expired during 1989.

■ The department argues that the notes were worthless earlier based on the fact that taxpayer admits it is unlikely anyone would have paid him for the notes. However,

worthlessness of bad debts is to be determined based on all the pertinent evidence. *See* Treas Reg § 1.166-2(a). Here the obligors were all property owners for whom taxpayer had rendered services. Recognizing that property values had decreased during the major recession in the early 1980s, taxpayer could reasonably hope that increasing values would enable the obligors to gain ability to pay the notes. The court finds that the three notes dated 1983 became worthless in 1989.

### Dependent Exemption

Taxpayer and his wife divorced sometime in the 1970s, and his wife obtained custody of their daughter. Taxpayer has been paying child support of $125 per month. He claimed his daughter as a dependent on his 1989 and 1990 tax returns. Taxpayer testified that he did not know the total amount of support actually provided the daughter. He claimed her as a dependent for 1989 and 1990 because he believed his ex-wife had not. Taxpayer and his ex-wife have no agreement or court order establishing their rights to claim the exemption. Taxpayer testified that his wife had remarried and that both she and her new husband were employed.

Based on the meager evidence submitted, the court finds that taxpayer failed to prove he is entitled to the exemption. The amount of $125 per month is unlikely to represent more than 50 percent of the cost to support a 16- or 17-year-old girl. Taxpayer could have asked his ex-wife to testify that she did not claim the exemption. He could have also submitted more detailed information about the amount of support actually provided the daughter. In the absence of any other information, the court finds that taxpayer is not entitled to the exemption.

### Dividend Income

Taxpayer maintains that the final adjustment to his dividend income of $1,047 should be further reduced by $520.41, the amount of dividend and interest income that taxpayer reported. The department responds that the amount taxpayer reported is already accounted for and that $1,047 is the additional amount owing. The court finds the department is correct. Although taxpayer was able to point

out some errors in the audit report, taxpayer has not shown that the amount of additional dividend income fails to reflect the dividend income he already reported.

*First Interstate Bank Income*

The federal audit report indicates that, in 1990, taxpayer received $2,898 in income that he failed to report. The audit report was based on a 1099-R issued by the Trust Division of First Interstate Bank in Portland. The listing document correctly identifies taxpayer, including his social security number. The report indicates that the amount paid out was an "IRA 1."

Taxpayer testified unequivocally that he never had an IRA with First Interstate Bank. He testified that he had an IRA with Dreyfus Fund and Columbia Fund. Faced with proving a negative, taxpayer asked Wells Fargo Bank, the successor to First Interstate Bank, for a letter clarifying his position. An operations specialist from Wells Fargo sent taxpayer a letter indicating that, according to the bank's records, it was "unable to locate any traditional or retirement accounts open or closed for Mr. George Kingsley." Taxpayer forthrightly admits that the letter is in error because he did have a savings account with First Interstate Bank.

Resolution of this issue is difficult. Although the bank could have issued the 1099-R report in error, it is more likely that taxpayer's memory is in error. The court notes that taxpayer opened many bank accounts. During the years in question, taxpayer had at least four concurrent checking accounts, including two in Springfield, Oregon, one in Salt Lake City, Utah, and one in Corvallis, Oregon. His testimony suggests that he had other open accounts. Neither party introduced copies of taxpayer's returns nor other additional information or evidence that would assist the court in determining whether the report to the IRS was in error.

To avoid a stalemate, the legislature has imposed the burden of proof upon the party seeking relief. In this case, that is taxpayer. The court finds that taxpayer has failed to establish that there was no payout. It should be noted that the Wells Fargo letter invited questions. Since taxpayer

knew the letter was wrong, he could have accepted the invitation to call and discuss the matter in more detail. It may be that Wells Fargo was not referring to First Interstate records. If taxpayer had asked for First Interstate Bank records to be examined, he may have been able to support his claim. As noted, in the absence of any other evidence, the court concludes that taxpayer failed to show the amount reported was in fact not received.

The court will enter judgment consistent with the above Opinion. Costs to neither party.